NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARGARET MALAVE, | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : | Civil Action No. 08-4551 (DMC) |
|  | : |  |
| MICHAEL J. ASTRUE | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiff Margaret Malave's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Supplemental Security Income ("SSI") under the Social Security Act (the "Act") for the period of May 27, 2005 through January 1, 2008. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. As detailed below, the final decision entered by the Administrative Law Judge ("ALJ"), Richard L. De Steno, in the absence of testimony by a vocational expert, is **remanded** for further proceedings consistent with this opinion.

I.   **BACKGROUND**[1]

A.   *Procedural Background*

Plaintiff, Margaret Malave, filed an application for SSI on May 27, 2005, alleging disability beginning January 15, 2000.   On August 24, 2006, her claim was denied under the Disability Redesign Prototype procedures.   Plaintiff filed a timely written request for a hearing on September 15, 2006.   Plaintiff appeared and testified at a hearing before the ALJ on November 29, 2007.   At counsel's request, the record remained open following the hearing until December 27, 2007 so Plaintiff could submit additional medical records.   Plaintiff failed to submit additional records.   On January 8, 2008, the ALJ issued a decision finding that although Plaintiff suffered from a number of conditions, diabetes mellitus, polyneuropathy and lumbar degenerative disc disease, Plaintiff was not disabled in accordance with 20 C.F.R. Part 404, Subpart P, Appendix 1.   Plaintiff was not found to have an impairment or combination of impairments preventing her from performing the full range of light work.   Plaintiff's request for a review by the Appeals Council was denied on July 24, 2008.   Plaintiff requests a reversal of the ALJ's decision finding that she was ineligible for SSI benefits.

B.   *Factual Background*

i.   Medical Records and Evaluations

Plaintiff alleges that she has been disabled since May 15, 2002 as a result of diabetes mellitus, polyneurophathy and lumbar degenerative disc disease.   Plaintiff claims to suffer from carpal tunnel syndrome; however, she fails to offer documentation evidencing this assertion.

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective briefs.

2

1.      Lathan Consultative Examination

In 2002, when Plaintiff was examined by Dr. William Lathan, she was 46 years old with a history of diabetes and diabetic neuropathy of both feet. The doctor reported Plaintiff's last employment to have been as a housekeeper in 2002. T. 49. She complained of numbness in both feet. T. 69. Plaintiff's documented medications include Insulin, 70 units daily; Levothyroxine, 10 mcg daily; Glyburide/Metformin, 5/500 mg, daily; Acots, 30 mg, daily; Gabapentin, 600 mg, daily. Id. The diagnosis provided by Dr. Lathan was diabetes and diabetic neuropathy. Id. At the time of this medical evaluation, Plaintiff's prognosis was stable despite a moderate restriction for prolonged standing and walking. T. 70.

2.      Cochrane Consultative Examination

A consultative examination by Dr. Kenneth Cochrane, on April 19, 2006, revealed that Plaintiff was experiencing increased appetite, cognitive symptoms in the form of short-term memory deficits, concentration difficulties, some long-term memory deficits, and organizational difficulties. T. 72    Dr. Cochrane's report documented Plaintiff's motor behavior as lethargic and speech intelligibility as fluent, although slightly mumbled at times. T. 73. Her affect was depressed, her mood was dysthymic, and her intellectual functioning fell within the borderline level. T. 73. Plaintiff's insight was poor and her judgment was fair. T. 74. She was unable to manage money, drive or maintain a regular schedule without assistance. Id. She was only able to maintain attention and concentration for short periods of time. Id. While minimally able to learn new tasks, she was unable to perform complex tasks independently and deal appropriately with stress. Id. Her current vocational difficulties were caused by cognitive deficits and psychiatric symptoms. T. 75. However,

3

Plaintiff is able to dress, cook, bathe, groom and clean. T. 74. Plaintiff was coherent and cooperative. T. 73. Dr. Cochrane recommended that she undergo psychiatric intervention and that she be referred for a cognitive evaluation. T. 75. The prognosis was guarded, given diagnostic questions.

### 3. Cohen Medical Report

A medical report, dated May 9, 2006, from Dr. Charman Cohen stated that he had first treated the Plaintiff on March 20, 2006 for diabetes with poor glucose control and a history of anxiety. T. 77. Plaintiff complained of numbness in the toes and pain in her thighs. T. 77-82.

### 4. Hanley Medical Report

Upon referral by Dr. Eisenberg, Dr. Ann Hanley performed an EMG/Nerve conduction study on Plaintiff. Dr. Hanley's medical report, dated March 27, 2006, stated that an MRI of the lumbar spine performed on February 25, 2006 revealed a bulging disc at L 3/4 and L 4/5. T. 118. Superimposed left foraminal and right foraminal disk protrusions existed at L 3/4 with mild stenosis. Id. There was a loss of normal disk signal at L 3/4. Id. A sensory examination revealed decreased pinprick in the distal feel and a significant loss of vibratory sensation in the toes. T. 119. Reflexes were zero in the upper extremities, and one at the ankle and knee. Id. The EMG study revealed evidence suggestive of mild bilateral L5 SI radiculopathy and, in addition, there may be a component of a mild sensorimotor axonopathy likely related to her diabetic condition. Id. Generally, Dr. Hanley described the Plaintiff as well developed and well nourished in no apparent distress. Id. Dr. Hanley also found Plaintiff's general fund of knowledge adequate, identifying Plaintiff's ability to follow complex commands. Id.

5.     Eisenberg Medical Treatment Records

Medical treatment records from February 6, 2006 to August 28, 2006 from Dr. Carol Eisenberg show treatment for bilateral thigh and ankle pain.  T. 125.  Physical therapy was recommended for Plaintiff, but it was felt that it would not help because of her diabetic neuropathy. T. 126. She was having a lot of neuropathic pain.  Id.  She complained of being shaky and nervous and indicated that her hands would fall asleep while working on the computer or while sleeping. T. 129. She complained of numbness in the thighs and knees. Id. A tinel test was positive for tingling in the fingers bilaterally. Id. Plaintiff's bilateral thigh pain was considered secondary to lumbo sacral spine and diabetes mellitus. Id.

An MRI, performed at Dr. Eisenberg's request, resulted in the impression of a multilevel degenerative disc disease.  T. 128.  Notably, there was greater left than right foraminal disc protrusions and mild canal stenosis. T. 128. There is a straightening of the normal lumbar lordosis. There was a loss of normal disc signal at L3-1.  T. 128.  At L3-4, there was a disc bulge with superimposed left foraminal and extra foraminal and right foraminal disc protrusions.  T. 128. There was facet hypertrophy and mild stenosis was present. Id. At L4-5, there was a disc bulge and facet ligamentous hypertrophy.  T. 130. The impression was sensory polyneuropathy that is likely secondary to diabetes mellitus. T. 130.

ii.     Testimony

At a hearing before the ALJ, Plaintiff testified as to the subjective nature of her alleged impairments as well as her non-medical and vocational background.  Indicating that she was born

5

March 9, 1960, Plaintiff was 47 years of age at the time of the hearing.  She obtained a GED in Puerto Rico.  She is able to read and write English.  Plaintiff reported living with her son, daughter and aunt.

She testified that her medications include Metformin, Actos, Lantus, Novloc, Levothyroxine, Flexeril and insulin four times a day. T. 137.  She was afraid because she was directed to take only two pills a day and sometimes, she felt she required three.  T. 142. She feels that she is in need of emotional counseling because of her anxiety and crying.  She also has difficulty concentrating and sleeping.  T. 146-147.  She spends her day at home watching television and lying down.  Id.

Plaintiff suffered from diabetes and blurry vision.  T. 135.  As a consequence of her thyroid condition, Plaintiff indicated that her sugar and AC hemoglobin were difficult to control.  T. 138. When her sugar is elevated, she feels dizzy and like she is "high in the sky."   T. 139.   When her sugar is too high or too low she could feel the difference in her body.  This sugar fluctuation occurred frequently during the day.  T. 141.  She stated that even with glasses her vision became blurry when her sugar was high.  T. 145.

Plaintiff testified that she suffered from incontinence.  T. 140. Plaintiff expressed a fear of soiling herself and being embarrassed.  T. 140.

Plaintiff indicated that she suffered from neuropathy, creating numbness in her toes and legs. T. 136.  Plaintiff testified that her toes and feet were "asleep."  She did not feel anything when she put on her socks and her feet were always cold. T. 142.  The pain in her feet made it difficult to walk or stand. T. 143.  Using a cane, she was able to walk half a block and could stand for no more than 15 minutes. T. 143-144.  She can sit for about 15 minutes.  T. 144.  Additionally, Plaintiff identified

6

pain in her hands as a consequence of carpal tunnel syndrome. T. 144. She could lift no more than two pounds and had difficulty writing. Id. Plaintiff testified that she suffered from back pain and was told that she had a disc problem. T. 148.

## II.   STANDARD OF REVIEW

### A.   *Scope of Review*

The Court's review is limited to determining whether the Commissioner's decision is based upon the correct legal standards and is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405 (g); see also Richardson v. Perales, 402 U.S. 389, 390 (1971). A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993).    Substantial evidence is defined as that quantum of evidence which a "reasonable mind might accept as adequate to support a conclusion." Perales, 204 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405 (g). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Some types of evidence will not be "substantial." For example,

[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

<u>Wallace v. Sec'y of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions.  <u>Stewart v. Sec'y of HEW</u>, 714 F.2d 287, 290 (3d Cir. 1983).  "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently."  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 35 (3d Cir. 2001).  Thus, substantial evidence may be slightly less than a preponderance.  <u>Stunkard v. Sec'y of Health & Human Servs.</u>, 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality."  <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  <u>Id.</u> (quoting <u>Willibanks v. Sec'y of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

8

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)).

"[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

   B.   *Statutory Standard for Eligibility for SSI Benefits*

   A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Under the Act, a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

9

economy." 42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.The first two steps require the claimant to establish (1) that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-©. A failure to establish this initial burden automatically results in a denial of benefits, ending the court's inquiry. Bowen v. Yuckert, 482 U.S. 137, 146–47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial two-step burden, she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, a presumption of disability arises automatically entitling the claimant to benefits. Id. If she cannot so demonstrate, then the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's Residual Functional Capacity ("RFC") sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and, therefore, not entitled to disability benefits. Id. Should the claimant be unable to return to her previous work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner fails to satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

C.    *The Record Must Contain Objective Medical Evidence*

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

**III.   DISCUSSION**

Before the Court is Plaintiff's appeal of the ALJ's decision finding that Plaintiff does not suffer a disability in accordance with the regulations. Plaintiff argues that the Commissioner's

11

decision should be reversed because the ALJ improperly evaluated the medical evidence at steps three and four and erred in finding that Plaintiff can perform the full range of light work at step five. The Commissioner responds that the decision should be affirmed because the ALJ properly evaluated the medical evidence as well as Plaintiff's subjective complaints in determining Plaintiff's RFC. Finding that the ALJ properly evaluated all the medical evidence at steps three and four, and because the Commissioner's decision is supported by "substantial evidence," this Court rejects Plaintiff's argument on that ground.  However, given that the ALJ failed to obtain the assistance of a vocational expert  in determining that Plaintiff's limitations allow her to perform the full range of light work, this Court agrees with Plaintiff's appeal on that ground and remands this case for proceedings consistent with this Court's finding.

A.   *The Commissioner Properly Evaluated the Medical Evidence in His Determinations Regarding Steps Three and Four*

Plaintiff argues that the Commissioner failed to give credence to Plaintiff's complaints concerning her pain, limitation of motion and function, numbness and mental impairments.   This Court finds that the ALJ properly considered the evidence in its entirety, including medical reports and conclusions as well as Plaintiff's subjective complaints, and, therefore, agrees with his decision.

I.   *ALJ's Decision that Plaintiff's Impairments Did Not Equal That of a Listed Impairment is Supported by Substantial Evidence*

Plaintiff first challenges the ALJ's finding at step three that Plaintiff's impairments did not meet or equal that of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff contends that the ALJ placed the opinions of state agency consultants, reporting that Plaintiff's gait was "normal," above the medical expertise of Dr. Ann Hanley of Montefiore Medical Center,

Department of Neurology, who reported that an MRI of the lumbar spine performed on February 25, 2006 revealed a bulging disc at L 3/4 and L 4/5. Plaintiff also claims that the ALJ's finding that Plaintiff's complaints were not consistent with the medical evidence, but, instead, based on mere speculation. This Court disagrees.

In order to challenge the ALJ's decision, the Plaintiff must demonstrate that the Commissioner's decision was not supported by substantial evidence. As mentioned above, substantial evidence is defined as that quantum of evidence which a "reasonable mind might accept as adequate to support a conclusion." Perales, 204 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Additionally, in the face of conflicting evidence, an adequate explanation regarding the " reasons for rejecting or discrediting competent evidence" is required and must be established on the basis of the record. Benton v. Bowen, 820 F. 2d 85, 88 (3d Cir. 1987).

Applying these standards, the ALJ properly took into consideration the reports of the medical experts and determined that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. T. 13 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Significantly, the ALJ considered Dr. Cohen's opinion indicating that upon examination, Plaintiff's "sensation and reflexes were intact [and there were] no clinical signs of neuropathy." T. 79. The ALJ also considered Dr. Lathan's opinion that Plaintiff had no limitation in carrying, standing and/or walking, sitting and pushing and/or pulling. T. 81. Accordingly, given that the ALJ offered substantial evidence to support his decision that Plaintiff's impairments did not meet or equal that of a listed impairment, his decision was not the product of mere speculation and, therefore, was proper.

ii.  *The ALJ Did Not Substitute His Own Medical Opinion Over That of the Medical Professionals*

Plaintiff also claims that the ALJ improperly substituted his own medical opinion over that of the medical professionals in determining Plaintiff's RFC at step four.  See Land v. Weinberger, 520 F. 2d 782 (8th Cir. 1975) (ALJ may not draw upon his own inferences from medical reports); Plummer v. Apfel, 186 F.3d 422 , 429 (3d. Cir. 1999) (ALJ may not make speculative inferences from medical reports).  The foregoing  cases involve situations where the Commissioner failed to explain adequately his reason for rejecting or discrediting the evidence of a claimant's subjective complaints of pain.   In this case, however, the ALJ fully explained his decision and his considerations.   The ALJ took into account the opinions of Drs. Cochrane, Cohen and Eisenberg suggesting Plaintiff suffered from various mental functioning limitations and balanced this finding against the fact that Plaintiff herself testified that she had never been treated for a mental impairment.[2]  Therefore, the ALJ did not infuse the record with his own medical opinion, but rather made a decision based on substantial evidence found in the record.

iii.  *The ALJ Properly Considered all the Medical Evidence to Determine the Plaintiff's Mental Impairment was not Severe Enough to be Called a Mental Disability*

Plaintiff also argues that the ALJ should have determined that Plaintiff's mental impairment was severe enough to be called a mental disability.  The Court again disagrees.  The ALJ properly considered the four broad functional areas set forth in the regulation: (1) activities of daily living;

---

[2]It is claimant's duty to furnish objective medical evidence suggesting the presence of an impairment. 42 U.S.C. § 423(d)(5)(A).

(2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.92(a)(c)(3). In doing so, the ALJ referred to Plaintiff's testimony that she could perform all activities of daily living, including getting along with family and friends, working on the computer and using public transportation. T. 69 and 74. The ALJ found these activities to be in line with 20 C.F.R. § 416.92(a)(d)(1), indicating that an impairment is not severe if the individual has only mild restrictions. The ALJ then properly considered the complete record before him including objective medical findings, plaintiff's testimony and the lack of mental health medication or hospitalization. The ALJ's finding considered and underscored the absence of objective evidence suggestive of a significant intervening decline in Plaintiff's conditions as well as the fact that Plaintiff previously ignored doctor's instructions regarding treatment for her symptoms. T. 8. Subjective symptomatology alone is not a basis for a finding of disability. See 42 U.S.C § 423(d)(5); 20 C.F.R. § 416.929(a). In evaluating the foregoing considerations, the ALJ did not err in determining that because Plaintiff's degree of limitation was mild, the regulations provide that Plaintiff's mental impairment was not severe enough to be called a mental disability. T. 18.

      B.     *ALJ's Finding at Step Five that Plaintiff Can Perform the Full Range of Light Work is Not Supported by Substantial Evidence*

Plaintiff argues that the ALJ erred at step five in determining that Plaintiff can perform the full range of light work. The ALJ's failure to obtain the assistance of a vocational expert, in deciding whether Plaintiff's nonexertional limitations prevented her from doing the full range of light work, requires the Court to remand this issue.

Generally, once a disability claimant proves that his severe impairment prevents him from performing past work, the Commissioner must prove that the claimant still retains a RFC to perform alternative substantial gainful work which exists in the national economy. Rosa v. Callahan, 168 F.

3d 72, 77 (2d Cir. 1999). Since the Plaintiff has no past relevant work history, the ALJ considered whether Plaintiff is able to do any light work in the national economy.   T. 19-20.

Importantly, courts have held that "exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." Rosa v. Callahan, 168 F. 3d 72, 78 (2d Cir. 1999).  Moreover, in Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. N.Y. 1996), the court held that ". . . if a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids . . . Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, application of the grids is inappropriate."  The regulations define "nonexertional limitations" as

the impairment and restriction imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions. Some examples of nonexertional limitations or restrictions include the following: (I) you have difficulty functioning because you are nervous, anxious, or depressed; (ii) you have difficulty maintaining attention or concentration; (ii) you have difficulty understanding or remembering detailed instructions; (iv) you have difficulty in seeing or hearing; (v) you have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or (vi) you have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

Slovak v. Barnhart, 2003 U.S. Dist. LEXIS 26561 (D. Pa. Sept. 22, 2003) (citing 20 C.F.R. § 404.1569a©).

Significantly, in Burnam v. Schweiker, 682 F.2d 456, 458 (3d Cir. 1982), the claimant successfully challenged the denial of his application for SSI benefits after the ALJ found that even though he suffered from spinal issues, poor vision, poor hearing, hypertension, diabetes mellitus, and depression, the claimant was not disabled under the rules set forth in the medical-vocational regulations. Id. at 457.  Reversing, that court found that, because the ALJ determined the disability status on the basis of the grid alone, as opposed to the appellant's physical and mental condition as

a whole, the decision was not supported by substantial evidence. Id. That court stated that the ALJ did not consider the extent to which appellant's work capability was further diminished in terms of any types of jobs that would be contraindicated by his nonexertional limitations. Id. That court stated that "[s]ince the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." Id. (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e) (1981)). See also Wallace v. Secretary of Health and Human Services, 722 F.2d 1150 (3d Cir. 1983) (improper for ALJ to rely on single disability grids when appellant had both psychological and physical impairments); Green v. Schweiker, 749 F.2d 1066 (3d Cir. 1984) (improper for ALJ to apply grids where nonexertional complaints were at issue). [3]

This circuit has held that the appropriate way to determine work capabilities in light of both exertional and nonexertional limitations is to refer to a vocational expert. For example, Poulos v. Commissioner of Soc. Sec., 474 F.3d 88, 94 (3d Cir. 2007), held that "[w]hen a claimant asserts both exertional and nonexertional impairments, [ ] the ALJ cannot rely on the [grid] exclusively, but must consider other vocational evidence." Similarly, this circuit has held that in analyzing such claims, the ALJ must consider all of the relevant facts in the case, and specifically, vocational expert testimony. Jesurum v. Secretary, 48 F.3d 114, 121 (3d Cir. 1995) (citing 20 C.F.R. Part 404, Subpart

---

[3] For the sake of completeness and to address the Plaintiff's claim that the ALJ is under an obligation to seek additional information when there is an unclear gap in the administrative record, because the record was complete, the ALJ did not have the obligation to seek the evaluation recommended by Dr. Cochrane. Plaintiff cited a distinguishable case for this point. In Rosa, the court required that the ALJ seek out incomplete portions of the plaintiff's medical records. Rosa v. Callahan, 168 F. 3d 72, 77 (2nd Cir. 1999). That situation is not applicable to the present case since not seeking a recommended evaluation is not the same thing as an incomplete record, with obviously missing medical evaluations and examinations, as was the case in Rosa. Id. Therefore, this argument fails since the ALJ based his opinion on a complete collection of all medical evidence that was available about the Plaintiff, and he was not missing pertinent information.

P. Appendix 2, § 200.00(e)(2)); <u>Washington v. Heckler</u>, 756 F.2d 959, 967 (3d Cir. Pa. 1985) (vocational expert needed to deal with nonexertional impairments; reliance on grid is not sufficient).

Accordingly, because the ALJ properly determined that Plaintiff suffers from a mild medically determinable mental impairment, and because medical evidence shows that Plaintiff has difficulty maintaining concentration, the Court finds that Plaintiff may have nonexertional limitations not considered by the ALJ. T. 72-74. Determining the extent of these limitations requires the assistance of a vocational expert, who can assess the full scope of Plaintiff's impairments and evaluate whether a person with her exertional and nonexertional impairments would be able to perform general light work available in the national economy. Therefore, the specific issue of whether Plaintiff can perform "light work" is remanded for assistance of a vocational expert.

IV.   <u>CONCLUSION</u>

For the reasons stated, the Court finds that the decision of the ALJ should be **remanded** for further proceedings consistent with this opinion. An appropriate Order accompanies this Opinion..

Dennis M. Cavanaugh, U.S.D.J.

Date:       September 28, 2009
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File

18